CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

NOV 27 2013

JULIA C. DUDLEY, CLERK
BY: /s/ Linda Bush
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| AMANDA D. DENNISON, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CAROLYN W. COLVIN,[1] ) <br> Acting Commissioner of Social Security, ) <br> ) <br> Defendant. ) | Civil Action No. 5:13CV00015 <br><br> **MEMORANDUM OPINION** <br><br> By: Hon. Glen E. Conrad <br> Chief United States District Judge |

Plaintiff has filed this action challenging the final decision of the Commissioner of Social Security denying plaintiff's claims for a period of disability and disability insurance benefits, and for supplemental security income benefits, under the Social Security Act, as amended, 42 U.S.C. §§ 416(i) and 423, and 42 U.S.C. § 1381 et seq., respectively. Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). As reflected by the memoranda and argument submitted by the parties, the issues before this court are whether the Commissioner's final decision is supported by substantial evidence, and if it is not, whether plaintiff has met the burden of proof as prescribed by and pursuant to the Act. Stated briefly, substantial evidence has been defined as such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971).

The plaintiff, Amanda D. Dennison, was born on March 13, 1982, and has completed the seventh grade. She has previously worked as a deli/bakery worker, a gas station cashier, an office cleaner, a poultry plant worker, and a retail cashier. The Administrative Law Judge found

---

[1] Under Federal Rule of Civil Procedure 25(d), Carolyn W. Colvin, Acting Commissioner of Social Security since February 14, 2013, will replace Michael J. Astrue as the defendant in this suit.

that Ms. Dennison had not engaged in substantial gainful activity since January 31, 2010, the date of her alleged disability onset. (Tr. 21).

Ms. Dennison filed earlier applications for disability insurance benefits and for supplemental security income benefits on February 25, 2008. (Tr. 201). Those claims were denied upon initial consideration and reconsideration. (Tr. 201). She then requested a de novo hearing and review before an Administrative Law Judge. (Tr. 201). In an opinion dated December 18, 2009, the Law Judge also denied plaintiff's claims. (Tr. 201). Ms. Dennison appealed the denial of her claims for disability insurance benefits and for supplemental security income benefits to the Social Security Administration's Appeals Council, which adopted the Law Judge's denial as the final decision of the Commissioner. (Tr. 202). Having exhausted her administrative remedies, she then appealed the denial of her claims to this court. (Tr. 203). However, in an opinion dated July 1, 2011, this court affirmed. On that occasion, Ms. Dennison had alleged a disability onset date of January 1, 2008. The court found that the medical reports completed during the relevant period of time supported the determination that Ms. Dennison was not disabled for all forms of substantial gainful employment. (Tr. 200–13).

On May 18, 2010, the plaintiff filed new applications for a period of disability and disability insurance benefits, and for supplemental security income benefits. (Tr. 281). In her second set of applications, Ms. Dennison alleged that she became disabled for all forms of substantial gainful employment on January 31, 2010 due to degenerative disc disease, hip dysplasia, fibromyalgia, obesity, diabetes mellitus, borderline personality disorder, affective disorder, and anxiety disorder. Plaintiff now maintains that she has remained disabled to the present time. As to her claim for disability insurance benefits, the record reveals that plaintiff met the insured status requirements of the Act through December 31, 2012. See generally 42 U.S.C. §§ 416(i) and 423(a).

2

Ms. Dennison's claims were denied upon initial consideration and reconsideration. She then requested and received a de novo hearing and review before an Administrative Law Judge. In an opinion dated September 22, 2011, the Law Judge also determined that plaintiff is not disabled. The Law Judge found that Ms. Dennison suffers from degenerative disc disease; fibromyalgia; obesity; diabetes mellitus; affective disorder; and anxiety disorder. Because of these conditions, the Law Judge ruled that Ms. Dennison is disabled for her past relevant work activity. However, the Law Judge found that plaintiff retains sufficient functional capacity for a limited range of sedentary exertion. The Law Judge assessed Ms. Dennison's residual functional capacity as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a range of sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) involving lifting or carrying 10 pounds occasionally and less than 10 pounds frequently, standing/walking for at most 2 hours during an 8-hour workday, sitting about 6 hours during an 8-hour workday, and only occasional operation of foot controls. She can frequently climb ramps/stairs but can only occasionally climb ladders/ropes/scaffolds, balance, stoop, kneel, crouch, or crawl. She is moderately limited in her abilities to understand/ remember/ carry out detailed instructions, maintain attention/concentration for extended periods, work in coordination with/ proximity to others without being distracted by them, interact appropriately with the general public, accept instructions/ respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them / exhibiting behavioral extremes, respond appropriately to changes in the work setting, and travel in unfamiliar places/ use public transportation. She has difficulties with remembering detailed and complex instructions or information, but can be expected to complete a normal work week performing simple routine tasks on a consistent basis without an unusual number of absences or requiring additional breaks outside of those typically acceptable in the work place. The claimant can also be expected to interact with others occasionally. Any changes in the workplace should be introduced slowly and reinforced with several cues. She should work in an environment with little or no contact with others.

(Tr. 23–24). Given such a residual functional capacity, and after considering plaintiff's age, education, and prior work experience, as well as testimony from a vocational expert, the Law Judge determined that Ms. Dennison retains sufficient functional capacity to perform several

3

specific work roles existing in significant number in the national economy, including the roles of assembler, toy stuffer, and bread separator. (Tr. 31). Accordingly, the Law Judge ultimately concluded that Ms. Dennison is not disabled, and that she is not entitled to benefits under either federal program. See 20 C.F.R. §§ 404.1520(g) and 416.920(g). The Law Judge's opinion was adopted as the final decision of the Commissioner by the Social Security Administration's Appeals Council. Having exhausted all administrative remedies, Ms. Dennison has again appealed to this court.

While plaintiff may be disabled for certain forms of employment, the crucial factual determination is whether plaintiff was disabled for all forms of substantial gainful employment. See 42 U.S.C. § 1382c(a) § 423(d)(2). There are four elements of proof which must be considered in making such an analysis. These elements are summarized as follows: (1) objective medical facts and clinical findings; (2) the opinions and conclusions of treating physicians; (3) subjective evidence of physical manifestations of impairments, as described through a claimant's testimony; and (4) the claimant's education, vocational history, residual skills, and age. Vitek v. Finch, 438 F.2d 1157, 1159–60 (4th Cir. 1971); Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

After reviewing the record in this case, the court is constrained to conclude that the Commissioner's denial of plaintiff's applications for disability insurance benefits and supplemental security income is not supported by substantial evidence. The Law Judge's determination that Ms. Dennison's physical impairments are not so severe as to render her disabled for all forms of work activity is clearly supported by substantial evidence. However, whether the Law Judge's evaluation of Ms. Dennison's non-physical impairments is also supported by substantial evidence presents a closer question. Since the time that her earlier claims were denied, Ms. Dennison has sought and received additional treatment for her

4

emotional condition. The new reports document worsening symptoms. Ultimately, based on the medical records addressing Ms. Dennison's current psychiatric limitations, the court finds that the Commissioner's final decision is not supported by substantial evidence.

Ms. Dennison carries diagnoses including bipolar disorder, affective disorder, anxiety/panic disorder, and attention deficit disorder. Two treating psychiatrists, Dr. Lightner and Dr. Aldefer, have produced mental status findings and opinions which indicate that the plaintiff suffers from "marked" non-physical limitations in maintaining both "social functioning" and "concentration, persistence, or pace." (Tr. 941, 1228). A third treating psychiatrist, Dr. Widra, described her as having "chronic difficulties with concentration, attention, and short-term memory." (Tr. 1205). The Administrative Law Judge discounted these treating psychiatrists' reports, and relied explicitly on reports from non-examining state agency psychologists, in finding that the plaintiff possesses the residual functional capacity to perform a limited range of sedentary work.

The court concludes that the Law Judge's opinion is inconsistent with the governing administrative regulations, and that the Commissioner's treatment of plaintiff's mental health condition is not supported by substantial evidence. Indeed, the court believes that the Law Judge's reliance on the state agency psychological reports is especially suspect, given that the record reviewers produced their reports and opinions prior to receiving all evidence available from Ms. Dennison's treating psychiatrists, and relied heavily upon a consultative review completed more than one year prior to Ms. Dennison's new and current alleged disability onset date.

Further, the Law Judge explicitly relied on testimony from a vocational expert in finding that "the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Tr. 31). However, the hypothetical questions

5

posed to the vocational expert at the oral hearing did not adequately consider Ms. Dennison's non-exertional limitations. (Tr. 73–74). In determining that sufficient jobs exist for the claimant, the vocational expert considered only hypothetical situations in which Ms. Dennison had "no limit in ability to maintain attention and concentration for extended periods" and "no limit in ability to work in coordination with [others]." (Tr. 74). Ms. Dennison clearly suffers from mental impairments that affect her concentration and social functioning. For this additional reason, the court concludes that the Commissioner's determination is not supported by substantial evidence. Moreover, the court finds that the record, including all reports from the treating psychiatrists, clearly establishes that as a result of her psychiatric condition, the plaintiff cannot perform even the light sedentary work which she is otherwise physically capable of performing. Accordingly, the court concludes that Ms. Dennison has met the burden of proof in establishing total disability for all forms of substantial gainful employment.

The record shows that Dr. Jeffrey Lightner, a psychiatrist with RMH Behavioral Health, treated Ms. Dennison for several years and met with her on at least eight separate occasions. (Tr. 937). Shortly before the relevant period, on November 25, 2009, Dr. Lightner indicated in a Mental Impairment Questionnaire that Ms. Dennison suffered from "marked functional limitations" in maintaining both "social functioning" and "concentration, persistence, or pace." (Tr. 941). Dr. Lightner noted that "mood stability ha[d] been difficult to attain despite high doses of medications," and he also indicated that Ms. Dennison was unable to meet competitive standards in "maintain[ing] attention for [a] two-hour segment," "maintain[ing] regular attendance," "work[ing] in coordination with or proximity to others," and "understand[ing] and remember[ing] very short and simple instructions." (Tr. 937, 939). Dr. Lightner further reported that Ms. Dennison had "difficulty [with] memory and concentration." (Tr. 940).

Beginning on March 11, 2010, after Dr. Lightner left the practice, Ms. Dennison continued her treatment at RMH Behavioral Health with Dr. Raymond Aldefer, another psychiatrist. (Tr. 1224). Plaintiff continued to see Dr. Aldefer on a regular basis, meeting with him every one-and-a-half to three months. (Tr. 1224). Dr. Aldefer's notes from June 19, 2010 describe Ms. Dennison as easily agitated, and they indicate that she reported suffering from panic attacks two to three times per week. (Tr. 949). However, the notes also reflect that Ms. Dennison carried a "fair" affect and "logical," "coherent" thought processes. (Tr. 949). Shortly thereafter, on June 30, 2010, Dr. Aldefer reported that Ms. Dennison "fears that someone is watching her computer even when it is off," feared "the house will catch on fire," and felt that "something bad is going to happen." (Tr. 1235). He also reported that the claimant's moods were unstable. (Tr. 1235). Ms. Dennison saw Dr. Aldefer again on August 27, 2010. At that time, he indicated that she was confused about when to take her medications, and that she did not know the correct dosage. (Tr. 1196). He also reported that her mood was "down," noting that she had "good days and not good days." (Tr. 1196). Again, he reported a "fair" affect and "logical," "coherent" thought processes. (Tr. 1196).

On September 9, 2010, Dr. Sandra Francis, a state agency psychologist, completed a Disability Determination Explanation form in which she concluded that Ms. Dennison suffered from "moderate" functional limitations in maintaining both "social functioning" and "concentration, persistence, or pace." (Tr. 142). In forming her opinion, Dr. Francis reviewed the record in Ms. Dennison's case, but did not physically examine the claimant. The most recent piece of evidence reviewed was dated August 17, 2010. (Tr. 133). Notably, the evidence reviewed did not include later reports from Ms. Dennison's treating physicians—Dr. Aldefer and Dr. Widra—finding that the claimant suffered from "marked" functional limitations in maintaining both "social functioning" and "concentration, persistence, or pace," and that the

7

claimant suffered from "chronic difficulties with concentration, attention and short term memory." (Tr. 1205, 1228).

After reviewing the available record, Dr. Francis determined that Ms. Dennison was not disabled. (Tr. 150). Specifically, she found that while Ms. Dennison's "mental conditions [had] affected [her] ability to perform some activities," including work she had done in the past, she should nevertheless be able to "follow simple directions, and perform simple, routine work." (Tr. 151). In making this determination, Dr. Francis gave "great weight" to a mental status evaluation performed by Dr. Leen, who had conducted a one-time, in-person psychiatric interview on January 14, 2009—more than one year prior to the alleged disability onset date. (Tr. 143).

On January 24, 2011, another state agency psychologist, Dr. Nancy Heiser, similarly found that Ms. Dennison suffered from "moderate" functional limitations in maintaining both "social functioning" and "concentration, persistence, or pace." (Tr. 165). Dr. Heiser, too, gave Dr. Leen's opinion—which predates the alleged disability onset date by more than a year—"great weight as it is consistent with the medical findings and the majority of claimant's current [mental residual functional capacity]." (Tr. 167). However, she gave the more recent opinion of Dr. Lightner, plaintiff's treating physician for several years, "lighter weight because it is from over a year ago." (Tr. 167). Like the first state agency psychologist, Dr. Heiser did not have the opportunity to review all reports by Ms. Dennison's other treating psychiatrists, Dr. Aldefer and Dr. Widra, which describe the claimant's severe concentration and social functioning limitations. The most recent piece of evidence reviewed by Dr. Heiser was dated January 10, 2011.

On April 22, 2011, Ms. Dennison completed an intake assessment at the Harrison-Rockingham Community Services Board. RMH Behavioral Health referred Ms. Dennison to the Community Services Board because she was unable to afford continued treatment at RMH

8

Behavioral Health without financial assistance. (Tr. 1208). She reported "high levels of anxiety," "irritability and paranoia," and "frequent and severe mood swings." (Tr. 1208). She also reported "significant difficulty with her ability to concentrate" and her short-term memory. (Tr. 1208). For example, she "forgot[] things like how to spell her name while signing a check," "basic math when counting money," or that "she was driving while in the midst of doing so." (Tr. 1208). The counselor noted that Ms. Dennison "displayed many repetitive gestures and movements during the course of the intake." (Tr. 1209). "She was unable to maintain eye contact for more than a few seconds at a time and spent a significant portion of the session leaning over with her head down facing the floor." (Tr. 1209).

On May 27, 2011, plaintiff met with Dr. Kenneth Widra, a psychiatrist with the Harrison-Rockingham Community Services Board. (Tr. 1205–07). Dr. Widra noted that Ms. Dennison "continue[d] to endorse anxiety, near panic, irritability, paranoia, and agitated depression," in addition to "chronic difficulties with concentration, attention and short term memory . . . ." (Tr. 1205). Upon interviewing the claimant, he found:

> She is fidgety, rocks a bit, and psychomotor agitation is present. She is irritable, guarded, and mildly paranoid through the interview with low frustration tolerance. . . . Mood is depressed and irritable. . . . Cognition is grossly intact, but concentration and attention are poor.

(Tr. 1206).

Ms. Dennison returned to treat with Dr. Aldefer in June and July, 2011. During that time, he reported that her "stress levels are relatively high," and that she can be "irritable" or "sad," but that "other times, 'nobody can stop [her] feeling happy.'" (Tr. 1234). He noted that she had recently suffered a manic episode lasting several weeks, during which time she believed herself to have superhuman powers. (Tr. 1231). She also explained to Dr. Aldefer that she had lost her cashier job over one year prior because she "forgot how to make change, lost concentration, had panic attacks, and thought [the] customers were talking about her." (Tr. 1231).

9

On July 27, 2011, Dr. Aldefer indicated in a Mental Impairment Questionnaire that Ms. Dennison suffered from "marked functional limitations" in maintaining both "social functioning" and "concentration, persistence, or pace." (Tr. 1228). He echoed Dr. Lightner's findings from November 2009, noting that Ms. Dennison was unable to meet competitive standards in "maintain[ing] attention for [a] two-hour segment," "maintain[ing] regular attendance," and "understand[ing] and remember[ing] very short and simple instructions." (Tr. 1226). His evaluation of Ms. Dennison's ability to "work in coordination with or proximity to others" deteriorated such that she had "no useful ability to function." (Tr. 1226). He further indicated that Ms. Dennison had "no useful ability" to "complete a normal workday and workweek without interruptions from psychologically based symptoms." (Tr. 1226). Ms. Dennison continued to treat with Dr. Aldefer for the remainder of 2011 and throughout 2012 without significant improvement.

As previously noted, the Commissioner discounted the treating psychiatrists' reports, and relied explicitly on reports from the non-examining state agency psychologists, in finding that the plaintiff possessed the residual functional capacity to perform a limited range of sedentary work. The Law Judge determined that the non-examining psychologists' reports should be "afforded considerable weight" since they were "consistent with and supported by the other evidence of record, including treatment notes." (Tr. 29). The opinions of Drs. Lightner and Aldefer were given "no significant weight" and "little weight," respectively. (Tr. 28–29). The Law Judge noted that Dr. Widra performed a psychiatric evaluation of the claimant, but did not indicate the weight given to his findings. (Tr. 27).

Having reviewed the record, the court is unable to conclude that the Law Judge's treatment of the reports and opinions from the treating psychiatrists, or the Law Judge's reliance on the reports of non-examining state agency psychologists, comport with the requirements of

the administrative regulations dealing with the evaluation of opinion evidence. Under 20 C.F.R. § 404.1527(c)(1), it is explicitly provided that, generally, more weight will be given to the opinion of a medical source who has actually examined the claimant. Moreover, 20 C.F.R. § 404.1527(c)(2) directs that, generally, more weight is given to opinions of treating sources, since such professionals are more likely to provide a detailed, longitudinal picture of the claimant's medical impairments. Finally, under 20 C.F.R. § 404.1527(c)(5), it is noted that more weight is accorded to the opinion of a specialist about medical issues related to the area of specialty.

In the instant case, it is clear that Dr. Lightner, Dr. Aldefer, and Dr. Widra actually saw Ms. Dennison on several occasions, whereas the state agency psychologists have never seen or examined the plaintiff. Moreover, there can be no question that Drs. Lightner, Aldefer, and Widra qualify as treating sources. Perhaps most importantly, there is a substantial contrast between the qualifications of Drs. Lightner, Aldefer, and Widra and those of the state agency psychologists. The three treating physicians each have a medical specialty in psychiatry. The state agency psychologists are not physicians. Finally, and significantly, the psychiatrists' opinions are consistent with their clinical findings and impressions. In such circumstances, the court does not believe that the Law Judge's reliance on the reports of the non-examining psychologists can be deemed to be supported by substantial evidence.

The court continues to believe that earlier reports from Ms. Dennison's treating psychiatrists, particularly Dr. Lightner, are inconsistent with plaintiff's actual level of activity at the time of evaluation. (Tr. 206). However, the court concludes that the later reports from Ms. Dennison's treating psychiatrists, several of which were received after the state agency psychologists reviewed the record, clearly establish that plaintiff does not possess the ability to concentrate or pay attention to the work tasks envisioned by the vocational expert. Additionally, because the vocational expert seemingly had difficulty identifying alternate jobs even under the

hypothetical provided, the court finds that there are no specific jobs which exist in the national economy that a person with the claimant's exertional and non-exertional limitations could perform. Accordingly, the court concludes that Ms. Dennison has met the burden of proof in establishing total disability for all forms of substantial gainful employment.

The court recognizes that Ms. Dennison's condition has gradually deteriorated over a period of years. Consequently, establishing the precise date of disability onset is difficult. The court notes that Ms. Dennison applied for and received unemployment benefits between November 2010 and August 2011, indicating that during that time period, she was capable, willing, and able to work. (Tr. 43). Accordingly, the court finds that Ms. Dennison became disabled as of September 1, 2011.

For the reasons stated, the court is constrained to conclude that the Commissioner's final decision is not supported by substantial evidence. The defendant's motion for summary judgment must, therefore, be denied. Upon the finding that the plaintiff has met the burden of proof as prescribed by and pursuant to the Act, judgment will be entered for the plaintiff. The final decision of the Commissioner will be reversed and the case recommitted to the Commissioner for computation and award of appropriate benefits. A judgment and order in conformity therewith will be entered this day.

The Clerk is directed to send certified copies of this opinion and the accompanying order to all counsel of record.

ENTER: This 27th day of November, 2013.

_____
Chief United States District Judge